## C. M. Waggoner v. The State.

No. 7806.   Decided November 28, 1923.

**Murder—Evidence—Theory of Defense—Rebuttal.**

Where, upon trial of murder, the quarrel following the conversation of appellant with the wife of the deceased, tending to show motive and malice was in evidence, and the rejected testimony would have tended to rebut the theory of malice to explain the complaint to the wife of the deceased in a manner consistent with appellant's theory of defense, and to rebut the testimony of the State, the same was reversible error.   Following, Nelson v. State, 58 S. W. Rep., 107.

Appeal from the District Court of Wichita.   Tried below before the Honorable E. W. Napier.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. H. Gipson,* and *Taylor & Taylor,* and *Davenport, Cummings & Thornton,* for appellant.   Cited, Williford v. State, 42 S. W. Rep., 972.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—Conviction is for murder; punishment fixed at confinement in the penitentiary for a period of five years.

Several persons residing in the neighborhood were attracted to the home of the deceased and saw the homicide.   These witnesses heard pistol or rifle shots and saw deceased Webb and Scott on the premises.   Scott had a gun and the deceased had a part of a paling in his hand.   No other weapons were seen by the State's witnesses in the hands of Webb.   Appellant came on the scene with a shotgun and shot Webb.   After Webb was shot, Scott got over the fence and left the premises.   The wife of the deceased testified that when appellant appeared, he said:   "Come out, Webb, I am going to shoot you."

A few days antecedent to the time of the homicide, appellant and Webb had a wordy difficulty in which Webb complained of a conversation which appellant had had with the wife of Webb.   Webb, in this affair, abused appellant and threatened to injure him if he again came on the premises of the deceased.   Appellant replied that if there were violations of the law on the premises of the deceased, he would go there and perform his duty as a peace officer.

According to the State's witnesses, three shots from a gun were fired by the appellant.   There is some testimony from the same source that a fourth shot from a pistol was heard.

This is appellant's version: He had heard shooting on Webb's premises on other occasions. Webb accosted him on the street and asked him what he meant by talking to his (Webb's) wife in that way last Sunday. Appellant said that he meant no harm, and said: "I just heard this shooting over there and I asked Mrs. Webb who it was. She said it was Buddy." Appellant then said: "Well, you have Buddy to stop it; it is a violation of the law to shoot inside the corporation." He told Webb that this was what he said and no more. Webb said: "I would sooner believe her than you." He told the appellant that if he came to his house again he would build a fire under him. Appellant replied that he would not come unless the law was violated, but that he was an officer and would come if there was a violation. Webb at the time appeared angry and was drinking, though not drunk. While sitting on his porch a short time before the homicide, appellant saw Webb and Scott together at Webb's home; that Webb handed Scott a gun; that they laughed and looked at appellant's house and then looked at the gun; that Scott then handed it back to Webb. It was a Winchester or shotgun, not a pistol. While eating his dinner, appellant heard shots from a pistol coming from Webb's premises; that he took his shotgun and went there to make an arrest for the violation of the law. Appellant, had been told by one Hawkins that Webb intended to kill him and he felt the necessity of arming himself; that he observed Webb coming around the corner of the barn; that he pushed the gate open and had his left hand on the gate. Appellant advanced from one hundred feet away. Webb opened the gate and the appellant said: "Come on out, Mr. Webb; I have you arrested." Webb threw his head around and appellant saw Scott run up to Webb and hand him something; that Webb then presented a pistol and fired at the appellant. Appellant then raised his gun, but it fired accidentally. Webb got behind a post and appellant fired the second shot. As he was unbreeching his gun, Mrs. Webb came upon the premises. Webb got behind a pile of lumber which concealed him. After reloading the gun, Mrs. Webb grabbed it and it fired accidentally. Appellant then retreated to a point nearby and remained until the officers arrived.

Appellant offered to prove by the witness Cole that shots had been fired around the premises of the deceased on previous occasions, and by the witness Moore that a week or two before the homicide complaints had been made to the appellant about the shooting on the premises of the deceased.

Taking note of the nature of appellant's defense, and the verdict of murder; the rejection of evidence that the shooting on the premises of the deceased had occurred on previous occasions and that complaints of it had been made to the appellant, was error.

The homicide took place at the home of the deceased. The State, through Mrs. Webb, claimed that appellant had come to the premises with the declared intention of shooting deceased. It is appellant's theory and testimony that he came to arrest the deceased for violating the law. The State showed a former difficulty, and appellant testified that it grew out of an effort on his part to remonstrate with the deceased because of the shooting on his premises and that in the absence of the deceased, the complaint was made to his wife.

The quarrel following the conversation of appellant with the wife of the deceased was one of the facts tending to show motive and malice of the appellant. The rejected evidence would have tended to rebut the theory of malice, to explain the complaint to the wife of the deceased in a manner consistent with appellant's theory of defense, and to rebut the testimony of the State that appellant went to the premises of the deceased with the expressed intent to shoot him and not for the purpose of arresting him. Nelson v. State, 58 S. W. Rep., 107; Cyc. of Law & Proc., Vol. 21, p. 899, note 94.

Because of the error pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*